### JAMES W. TUFTS v. T. L. LAWRENCE & CO.
#### No. 6598.

1.   **Sale of Article to be Manufactured.**—When the contract of sale is executory and for an article which is not in existence at the time of the sale, but is to be manufactured or is to be grown, no property therein passes to the vendee until the thing is not only completely finished and ready but is either actually delivered to him or at least is set aside and appropriated to him and accepted by him. Gammage v. Alexander, 14 Texas, 420.

2.   **Same—Case in Judgment.**—Lawrence & Co., May 9, 1885, made an order on Tufts, of State of Massachusetts, through his agent, for a soda water apparatus, to be made and shipped by a designated route to them in Brownwood, Texas. Tufts accepted the order and proceeded to have the apparatus constructed. June 2 thereafter Lawrence & Co. telegraphed him revoking the order. Tufts completed and shipped the apparatus June 4. Lawrence & Co. refused to receive the machine. *Held:*

1.   That Tufts, upon receiving the telegram revoking the order, had no right to proceed upon it to completion, nor to recover upon the contract.

‡ 2.   His remedy was to sue for breach of the contract, and he was entitled to recover the difference between the contract price and the value of the article in the condition existing when he received notice from Lawrence & Co. revoking the order.

3.   It was error to instruct the jury that the measure of damages was the contract price.

APPEAL from Brown.  Tried below before Hon. J. C. Randolph.
The opinion contains a statement.

*Scott & Jenkins,* for appellant. — 1.  The court erred in charging the jury that plaintiff claimed that defendants had broken their part of the contract by notifying plaintiff on the 2d day of June, 1885, that they would not receive said apparatus, etc., as shown in that portion of the charge in which the court states the case to the jury; the plaintiff on the contrary having distinctly stated that the first knowledge he had of defendants' intention to violate their part of the contract was from defendants' telegram of June 9, 1885, in which they for the first time distinctly refused to receive the soda water outfit.  The charge complained of was in fact erroneous.  Appellant did not so claim, and it was calculated to cause the jury to believe that appellant understood and had notice that appellees intended to avoid the contract and that they would not receive the soda water outfit before he had finished the same.  Mitchell v. Zimmerman, 4 Texas, 75; Norvell v. Oury, 13 Texas, 31; Love v. Wyatt, 19 Texas, 312; Dodd v. Arnold, 28 Texas, 97; Loving v. Dixon, 56 Texas, 75; Dufford v. Hecker, 2 Ct. App. C. C., sec. 613; Hampton v. Dean, 4 Texas, 455; Thompson v. Shannon, 9 Texas, 536; Yarborough v. Tate, 14 Texas, 483; Andrews v. Smithwick, 20 Texas, 111; Austin v. Talk, 20 Texas, 164; Garrett v. Chambliss, 24 Texas, 618; Altgelt v. Brister, 57 Texas, 432; Blanton v. Mayes, 58 Texas, 422; Belcher v. Fox, 60 Texas, 527; Cook v. Dennis, 61 Texas, 246; Railway v. Rider, 62 Texas, 267; Rosenthal v. Middlebrook, 63 Texas, 333; Railway v. Faber, 63 Texas, 344; Teligman v. Wilson, 1 Ct. App. C. C., sec. 897.

2.  It is the duty of the trial judge to set aside the verdict and grant a new trial when the verdict of the jury is plainly contrary to the facts proved on trial of the case.  Weisiger v. Chisholm, 28 Texas, 792, and cases cited; Hall v. Layton, 16 Texas, 271; Thorn v. Frazier, 60 Texas, 258; Railway v. Casey, 52 Texas, 112; Simonton v. Forrester, 35 Texas, 584; Railway v. Bracken, 59 Texas, 71; Railway v. Schmidt, 61 Texas, 282; 65 Texas, 585.

3.  The court should have granted a new trial, as the jury could not have reasonably discredited the testimony of appellant.  Hall v. Layton, 16 Texas, 271; Thorn v. Frazer, 60 Texas, 257.

4.  It was the duty of the court to set aside the verdict and grant a new trial when the law given by the court in its charge is applicable to the facts developed on the trial of the cause, and when the verdict of the jury is plainly contrary to said facts proved.  Neal v. Birdseye, 39 Texas, 605; Edrington v. Kiger, 4 Texas, 89; Long v. Steiger, 8 Texas, 460; Chandler v. Meckling, 22 Texas, 36; Rowe v. Collier, 25 Texas Supp., 252; Moore v. Anderson, 30 Texas, 224; McAfee v. Robertson, 41 Texas, 355; Johnston v. Shaw, 41 Texas, 428.

No brief for appellees.

HENRY, Associate Justice.—Appellees on the 9th day of May, 1885, signed an order to appellant to forward to them a soda water apparatus. Defendants lived and made the order at Brownwood, Texas. Plaintiff lived and received the order in Massachusetts. The order contained a particular description of the articles to be furnished. It also contained an agreement that upon receipt of a bill of lading payment of the price would be made in specified manner, and that the goods should be shipped by way of "Dublin, on the Houston & Texas Central Railway."

The evidence shows that the articles had to be manufactured after the order for them was given, and that they were completed and shipped on the 4th day of June, 1885, over the route designated.

Before the goods were shipped appellant received from appellees a telegraphic dispatch sent by them on June 2, 1885, reading: "Too late; don't send soda fountain." Plaintiff testified, without being contradicted, that when the telegram was received in Boston the apparatus "was all put together and set up; the inside parts, which were all finished, were last of all put in and connected, and then the apparatus was tested and packed, which required two days, and covered all that had to be done" after the telegram was received; that he does not keep such goods on hand, and that there are many different styles of apparatus, the possible combinations being over 150,000, so that he can not manufacture beforehand to suit customers' wishes, which may be controlled by a number of causes, on account of which one manufactured to comply with a given order and not taken, as in the present instance, is found difficult to value or to be sold, and is worth greatly less than its cost or contract price; that the price agreed to be paid by appellees was $870 in monthly installments of $30 each, with interest at the rate of 6 per cent per annum.

The goods were shipped to Dublin by appellant, and after remaining there for a considerable period were by his order sent to his own attorneys at Brownwood, in whose hands they still remain.

Appellees refused to receive them, and appellant has, it seems, been unable to sell them for a price that he was willing to take. A judgment in favor of defendants was rendered upon the verdict of a jury. Plaintiff's suit was for damages for breach of contract.

The charges of the court are complained of in some particulars, but we do not find the assignments of error in that respect well taken.

The third assignment of error reads as follows: "The court erred in overruling plaintiff's motion for a new trial, both first and second motions, for the reason that the verdict of the jury was not supported by the evidence adduced, but was contrary thereto, it being proved that defendants did make and deliver to Lee, traveling salesman for plaintiff, the order for soda water outfit, as set forth in plaintiff's petition, on May 9, 1885;

that it was forwarded through said Lee to plaintiff, who accepted the same and mailed to appellees his letter of acceptance on May 21, 1885; that nothing more was heard from defendants until a telegram of June 2, 1885, was received by plaintiff, saying, ' Too late—don't ship fountain;' that the soda water outfit was then finished and put up; that plaintiff packed and shipped the same by way of Dublin on the Houston & Texas Central Railway on June 4, 1885, and on same day mailed to defendants one of the original bills of lading; and that defendants by telegram of June 9, 1885, for the first time informed plaintiff they would not comply with their part of the contract; that plaintiff had fully complied with his contract, and that defendants had refused to receive the soda water outfit or to pay for the same or any part as agreed upon, or to pay or settle in any way, and defendants had failed to show any defense or excuse whatever."

In Benjamin on Sales it is said, speaking of the English rule: "When the agreement for sale is of a thing not specified, as of an article to be manufactured or of a certain quantity of goods in general without a specific identification of them, or an 'appropriation' of them to the contract, as it is technically termed, the contract is an executory agreement and the property does not pass.

"In America there is substantial uniformity in holding that a sale of an article 'to be manufactured' is executory, and. no title ordinarily passes until the thing is completely done; and it is even held that the title does not vest immediately upon completion, but only after notice to the vendee, or some act of the vendor setting it apart, marking it, or some other similar act.   But when the article is completed and the buyer notified thereof the title passes, unless the seller is bound to deliver elsewhere, and therefore he can recover the price."   Benj. on Sales, 279, 283.

The rule upon the subject was stated by this court in the case of Gammage v. Alexander, 14 Texas, 420, in the following language, quoting from Story on Sales:   "Where the contract of sale is executory, and for an article which is not in existence at the time of the sale, but is to be manufactured or made or is to be grown, no property therein passes to the vendee until the thing is not only completely finished and ready but is either actually delivered to him, or at least is set aside and appropriated to him and accepted by him."

The telegram sent by appellees on the 2d day of June and received by appellant before the goods were ready for delivery was a repudiation of the contract.   After it was received appellant had no right to proceed with the performance or to recover the contract price as if the property in the goods had passed to the appellees.   His remedy was to sue for damages for breach of contract, and he was entitled to recover the difference between the contract price and the value of the goods in the condition they were in when he received the notice at the place of their manufacture.

We think that the court properly charged that the repudiation of their contract by the appellees was made by their telegram of the 2d of June.

The charge of the court that the measure of damages for plaintiff, if he recovered, was the contract price was erroneous. The evidence shows a breach of their contract by appellees without there being anything to excuse it, and the court committed an error in not setting aside the verdict that gave plaintiff nothing, for which the judgment must be reversed and the cause remanded, so as to be proceeded with according to the rule herein announced.

*Reversed and remanded.*

Delivered June 3, 1890.