PRICE et al. v. J. B. FAIRCLOTH & CO.
(No. 37.)

(Court of Civil Appeals of Texas. Beaumont.
Dec. 11, 1915.)

1. APPEAL AND ERROR ☞797 — MOTIONS TO DISMISS—TIME FOR MOTION.

Where a case was filed in the Court of Civil Appeals on June 7th, a motion filed on October 2d to dismiss the appeal because the sheriff's return did not show service of a copy of the petition for the writ of error on defendants in error was made too late.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3149–3154; Dec. Dig. ☞797.]

2. APPEAL AND ERROR ☞655, 660—RECORD— MOTIONS TO STRIKE OUT.

Defendants in error filed motions to strike out the transcript and to strike therefrom purported findings of fact on the ground that they were never filed by the court or authorized by him to be filed, that they were prepared to assist plaintiff in error's counsel in preparing his motion for a new trial, and not for the purpose of appeal or as conclusions of law and fact for filing, and that on the motion for a new trial the question whether a fact not mentioned in such findings was proved was discussed, whereupon the trial judge stated that he remembered the proof of such fact, and thereupon overruled the motion. The motion to strike out was supported by the trial judge's affidavit and accompanied by a judgment of the trial court purporting to expunge the findings. Held, that the only way such matters could be brought before the Court of Civil Appeals was by certiorari, and the motions would be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2823–2825, 2829, 2844–2847; Dec. Dig. ☞655, 660.]

3. JUDGMENT ☞250—CONFORMITY TO PLEADINGS AND PROOF.

Where a buyer of railroad ties was to have the right of inspection, and its inspector refused the ties, the seller could not recover for the ties refused without pleadings and proof warranting such recovery.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 436; Dec. Dig. ☞250.]

4. JUDGMENT ☞251—CONFORMITY TO PLEADINGS.

Where, as found by the trial court, plaintiffs sold certain railroad ties which defendants refused to accept, plaintiffs could not recover on a petition alleging that the sale was made to defendants by C. and P., and that the account for the ties was transferred by C. and P. to plaintiffs.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. ☞251.]

5. SALES ☞214—REFUSAL OF GOODS BY BUYER—REMEDIES OF SELLER.

Where defendants ordered lumber from plaintiffs to be manufactured to order, defendants to have the right of inspection, the lumber remained the property of plaintiffs until accepted by defendants, though tendered to defendants and refused on report of their inspector, and plaintiffs' cause of action, if any, was for damages for breach of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 571–573; Dec. Dig. ☞214.]

6. SALES ☞379—REFUSAL TO ACCEPT—ELECTION OF REMEDIES—PLEADING AND PROOF.

Whether parties suing on account of defendants' refusal to accept railroad ties purchased by them were the sellers or purchasers of the account from the sellers, they could not recover without pleadings and proof showing an election by them to store and preserve the ties subject to defendants' order and recover the purchase price, to sell the ties as defendants' agent and recover the difference between the price received and the contract price, or to retain the ties as their property and recover the difference between the market price of the ties and the contract price thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1094; Dec. Dig. ☞379.]

Error from Jasper County Court; Garland Smith, Judge.

Action by J. B. Faircloth & Co. against J. M. Price and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

Ingram & Sanders, of Jasper, for plaintiffs in error. Powell & Huffman, of Jasper, for defendants in error.

MIDDLEBROOK, J. This is a suit tried in the county court of Jasper county, Tex., in which J. B. Faircloth & Co., a firm composed of J. B. Faircloth and K. J. Smith, were plaintiffs, and J. M. Price and R. C. Downs, composing the partnership of Price & Downs, and W. L. Cunningham and W. D. Peel, composing the partnership of Cunningham & Peel, were defendants. The suit was upon account which plaintiffs alleged was due the firm of Cunningham & Peel by the firm of Price & Downs, alleging that said account had been transferred and payment thereof guaranteed to them by Cunningham & Peel for a valuable consideration, and that thereby Price & Downs became indebted to and promised to pay Faircloth & Co. the sum of $228.55 for lumber and cross-ties sold and delivered by said defendants W. L. Cunningham and W. D. Peel to said defendants J. M. Price and R. C. Downs.

The defendants Cunningham & Peel did not answer, and judgment was rendered against them by default.

The defendants Price & Downs answered by general denial and specially that they did not on the 27th day of February, 1914, become indebted to the plaintiffs in the sum of $228.55 for lumber and cross-ties sold and delivered by said defendants Cunningham & Peel to J. M. Price and R. C. Downs, and also specially denied that they at any time entered into any contract with the defendants W. L. Cunningham and W. D. Peel by the terms of which they became indebted to Cunningham & Peel in the sum of $228.55, or any oth-

er sum, and by way of cross-action and counterclaim pleaded that they did, on or about the 3d day of May, 1912, enter into a contract with the plaintiffs, Faircloth & Co., by the terms of which Faircloth & Co. agreed to ship to the Denver & Intermountain Railroad Company, of Golden, Colo., 2,000 pieces, 6x8x6½, 90 per cent. heart, at $13 per thousand, f. o. b. cars at Roganville, Tex., the same being railroad ties, and, relying upon the acceptance of such order, the defendants Price & Downs accepted an order from the McShane Lumber Company, of Omaha, Neb., for 5,000 ties of the same dimensions and class as the order accepted by plaintiffs; that the plaintiffs wholly failed and refused to comply with the terms of said contract on the 1st day of August, 1912, and that, by reason of such failure, the defendants Price & Downs were damaged in the sum of $308.59, and that, by reason of the failure of the plaintiffs to fill their said contract with defendants Price & Downs, Price & Downs were forced to and did pay to the said McShane Lumber Company, of Omaha, Neb., the sum of $308.59, and that said amount was an actual loss to them by reason of the refusal of the plaintiffs, Faircloth & Co., to carry out and fill their contract with the defendants; that the defendants Price & Downs were due the plaintiffs Faircloth & Co., on car No. 256888 the sum of $80.72, and that the plaintiffs should have credit for that sum on the $308.59, leaving a balance due defendants Price & Downs of $227.87, and that said indebtedness accrued to Price & Downs on the 31st day of March, 1913; that Price & Downs were ready and willing and had at all times been ready and willing to carry out the terms of their contract with the plaintiffs, and that the loss of the $308.59 was wholly on account of the failure of Faircloth & Co. to carry out their contract with the defendants Price & Downs; that after the date of the acceptance of the contract with the defendants the plaintiffs further ratified the terms of same, and thereby prevented the defendants from protecting themselves by buying the ties from other parties, and fulfill their contract with the McShane Lumber Company.

In paragraph 8 of Price & Downs' answer they plead as follows:

"The said defendants Price & Downs would further say unto the court that there was a balance due plaintiffs by said defendants on car No. 256888 in the sum of $80.72, and that plaintiffs are entitled to and should receive credit for said sum, and that said amount deducted from the amount of the loss sustained by reason of plaintiff's failure and refusal to fulfill the terms of the contract as heretofore set out in the sum of $308.59 leaves a balance due by said plaintiffs to defendants Price & Downs in the sum of $227.87."

Issue was joined on this feature of the case by Faircloth & Co.'s supplemental petition, filed July 6, 1914, in paragraph 5 thereof, as follows:

"Plaintiffs specially deny all of paragraph 8 of said answer, except so much of same as admits that they are indebted in the sum of $80.72 for lumber, and of this put themselves upon the country."

Faircloth & Co. filed their trial amendment pleading the statute of two years' limitation in bar to Price & Downs' cross-action against it. In their supplemental petition heretofore referred to Faircloth & Co. also deny that they ever entered into any agreement with Price & Downs to furnish Price & Downs 2,000 cross-ties as alleged by them, and deny specially that they were due Price & Downs $227.87, as claimed.

The following judgment was entered by the court:

"J. B. Faircloth & Co. v. J. M. Price et al. No. 59. On this 27th day of July, A. D. 1914, this cause was reached and called for trial thereupon, whereupon came the plaintiffs, J. B. Faircloth and K. J. Smith, composing the partnership of J. B. Faircloth & Co., by their attorneys, and announced ready for trial, and also came J. M. Price and R. C. Downs, composing the partnership of Price & Downs, by their attorneys, and announced ready for trial, but W. L. Cunningham and W. D. Peel, composing the firm of Cunningham & Peel, though being duly served, came not, but wholly made default and filed no answer in court, service on each and all of the defendants being perfect and complete, a jury was waived, and all matters of fact as well as of law were submitted to the court, and the court, after hearing the pleadings read and evidence introduced and the argument of counsel, took the case under consideration until the 17th day of August, A. D. 1914, after having duly considered the same, did on the last-named day and date find that the law was with the plaintiffs, J. B. Faircloth and K. J. Smith, composing the firm of J. B. Faircloth & Co., and that the defendants were justly due and owed the plaintiffs the sum of $228.55, with interest thereon at the rate of 6 per cent. per annum from February 27, A. D. 1914.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs, J. B. Faircloth and K. J. Smith, plaintiffs, composing the firm of J. B. Faircloth & Co., do have and recover of and from the defendants, Price & Downs, a partnership composed of J. M. Price and R. C. Downs, and of J. M. Price and R. C. Downs, and W. L. Cunningham and W. D. Peel, and of Cunningham & Peel, a partnership composed of W. L. Cunningham and W. D. Peel, and of each and all of said defendants jointly and severally, the sum of $288.55, with interest thereon at the rate of 6 per cent. per annum from February 27, A. D. 1914, until paid, together with all costs by them in this behalf expended, and for which let execution issue. It is further ordered by the court that the officers of the court have judgment against each party for the costs respectively by them incurred, for which let execution issue. Garland Smith, County Judge, Jasper County."

In due time motion for new trial was presented and overruled by the court, and the case is in this court on writ of error sued out originally to the First Supreme Judicial District, having been filed in that court on the 7th day of June, 1915. The trial court filed his conclusions of fact and findings of law in the following terms:

J. B. Faircloth & Co. v. J. M. Price et al. No. 59. As conclusions of fact in the above entitled and numbered cause tried before me on the 3d day of August A. D. 1914, I find:

"That in April, 1912, W. L. Cunningham and

W. D. Peel were engaged in the manufacture of lumber and ties near Roganville, Tex., and that they were getting supplies on which to operate from J. B. Faircloth & Co., a firm composed of J. B. Faircloth and K. J. Smith, said firm of Faircloth & Co. doing business at Roganville, Tex.

"That Faircloth & Co. were handling the general output of the mill operated by Cunningham & Peel.

"That on or about the 28th day of April, 1912, J. M. Peel went to the said mill of Cunningham & Peel and asked them if they could fill an order of 2,000 pcs. 6x8x6½ heart, and Cunningham, who was in charge of the mill, advised that they could; that J. B. Faircloth was present at the time, and that said J. B. Faircloth and J. M. Price returned from said mill to Roganville together; that in Roganville said J. M. Price placed an order with J. B. Faircloth for 2,000 ties of 6x8x6½, 90 per cent. heart, at $13, f. o. b. Roganville; that there was nothing said as to when ties were to be delivered; that said order was oral; that on May 3, 1912, Price & Downs mailed a written order to J. B. Faircloth, & Co. in confirmation of said oral order given about April 28, 1912.

"I find that J. B. Faircloth & Co. paid for the lumber and ties by way of furnishing them with merchandise, etc., as per their agreement.

"That there was delivered on the railroad at Roganville 409 ties, 6x8x6½, said delivery being completed about the latter part of July, 1912.

"I find that under ordinary conditions the mill of Cunningham & Peel could cut car of ties in two days' time, and I further find that from April 28 until July 28, 1912, there was considerable rainfall in the vicinity of the mill and Roganville that greatly retarded the operation of the mill and transportation to the railroad.

"I further find that Price & Downs refused to accept said ties on about August 1, 1912, and that neither of them have ever accepted same nor paid any part of the agreed purchase price.

"I find that after the inspector had reported to Price & Downs that he had turned down the ties on the track at Roganville, that they then bought other ties of the same class and dimensions from other parties.

"I find that the ties included in said order from Price & Downs to J. B. Faircloth & Co. were subject to inspection and receipt of an inspector, said inspector to be furnished by Price & Downs. Garland Smith, County Judge, Presiding."

[1] On October 2, 1915, defendants in error filed in the court at Galveston, Tex., motion to dismiss the appeal, because the defendants in error were not shown by the officer's return to have been served with a copy of the plaintiffs' petition for writ of error; and the officer's return does not state that he served a copy of the petition.

In Zimmerman et al. v. Baugh, 160 S. W. 595, the court decided that a motion to dismiss an appeal because the petition for writ of error was not signed by the clerk came too late, not having been filed in the appellate court within 30 days after the filing of the transcript.

In the instant case defendants in error do not deny that a copy of the petition was properly served upon the defendants in error; they simply complain that the sheriff's return does not show such service. This case was filed in the Court of Civil Appeals at Galveston June 7, 1915. The motion to dismiss was filed October 2d. It came too late, and is overruled.

[2] On the 2d day of October defendants in error also filed another motion to strike out the transcript because: (1) It was not filed within 60 days after the return of citation in said cause; (2) because the transcript filed did not state the truth, in that it erroneously contained what purports to be findings of fact and conclusions of law; that the instrument appearing in the transcript as findings of fact and conclusions of law by the court was never filed by the court, and was not authorized by him to be filed; that it bears no file mark, and should be stricken out; that at the instance and request of C. C. Ingram, and for the purpose only of assisting Mr. Ingram in preparing his motion for new trial, and not for the purpose of appeal, or as conclusions of law and fact to be filed in said cause, the instrument was prepared by the county judge; that upon hearing of the motion for new trial the question of whether or not the plaintiffs introduced in evidence and proved the transfer of the claim of Cunningham & Peel against Price & Downs to J. B. Faircloth & Co., was discussed, and the court stated that he had forgotten the introduction and proof by the plaintiffs of the transfer of the account from Cunningham & Peel to J. B. Faircloth & Co. until his attention was called to the fact by plaintiffs' counsel; that the transfer, as stated, was the first thing offered in evidence upon the trial, and, when so reminded, Judge Smith stated that he then distinctly remembered that the transfer of said claim had been proved, and overruled the motion for a new trial. To this motion is attached the affidavit of Hon. Garland Smith, county judge at that time of Jasper county, in which affidavit he substantially states what is set up in the motion just quoted from.

On the 28th day of October, 1915, defendants in error filed in this court their motion again asking this court to strike from the record the purported findings of fact as contained in the transcript, assigning substantially the same reason as is assigned in previous motions, and attaching thereto a judgment of the county court of Jasper county, Tex., purporting to expunge the findings of fact from the record.

On the 20th day of November, 1915, plaintiffs in error filed in this court their motion to strike out all the motions theretofore filed by defendants in error because the same were not filed within 30 days after the filing of the transcript in the Court of Civil Appeals.

On the 24th day of November, 1915, the defendants in error replied to the motion of plaintiffs in error asking that said motion be overruled because it had no merit in it, as it did not relate to the form and manner in which said cause was brought before this court, etc., and that rules 8 and 11 are not applicable, as defendants in error's motion was for the purpose of striking from the record an instrument which is no part thereof, and which could not be legally done except

upon a judgment from the trial court declaring said instrument not to be a part of the record. By this last motion and plea defendants in error affirmatively admit that their motions filed in this case previously are not well taken, and should be overruled. We think the only way in which matters of this kind, can be gotten before this court is by certiorari. No such order has been asked of this court, nor has this court issued any such order. Therefore defendants in error's motions above set out are overruled. Wells et al. v. Driskill, 105 Tex. 77, 145 S. W. 333, and cases there cited.

It is to be noted that none of the motions filed nor the affidavit of Hon. Garland Smith, nor the judgment of the county court of Jasper county, Tex., seeking to expunge the findings of fact from the record, nor the pleadings in the case in the county court tend to dispute the truth of the findings of fact as contained in the record, so far as such findings go. The complaint is that such findings by the trial court are not complete; the chief complaint being that the findings of fact do not include the introduction and proof of transfer of an account alleged to be due Cunningham & Peel by Price & Downs, which was made the basis of this suit by the plaintiffs' original petition.

This brings us to the merits of the case. The suit is upon an account which the plaintiffs allege they bought from Cunningham & Peel, alleging that said account was due Cunningham & Peel by defendants Price & Downs, and that Cunningham & Peel guaranteed the payment of said account to plaintiffs, Faircloth & Co.

The findings of fact conclusively show: (1) A verbal order by Price & Downs to Faircloth & Co. (not Cunningham & Peel) for 2,000 cross-ties; (2) that a few days later the verbal order from Price & Downs was ratified by a written order to Faircloth & Co. The findings show that the only conversation Price & Downs ever had with Cunningham & Peel with regard to the ties was to find out whether or not Cunningham & Peel could cut the ties, and, upon being assured that they could do so, Price & Downs entered into an agreement with Faircloth & Co., who had control of the output of Cunningham & Peel's mill, by the terms of which Faircloth & Co. undertook to furnish to Price & Downs 2,000 cross-ties, f. o. b. cars at Roganville, Tex., such ties to be 6x8x6½, 90 per cent. heart, and subject to inspection by Price & Downs. It shows also that Price & Downs had the ties inspected, and the inspector refused, it would seem, about 409 ties, which were placed on the right of way at Roganville, Tex., and not f. o. b. the cars.

[3] If the ties were up to specification, and it thereby became the duty of appellants to accept them, and appellants refused to do so, according to our calculation, the 409 ties would be worth only $137.24; yet judgment is obtained for $228.55. Under the findings of fact in this case, no such judgment could legally be rendered, and, as the facts are presented to us, we do not see how any judgment could have been rendered against Price & Downs in excess of $80.72. Price & Downs having the right of inspection, and the inspector having refused the ties, it would follow that the plaintiffs, Faircloth & Co., could not recover for the ties refused, unless the pleadings and proof warranted such recovery, neither of which is shown by the record before us.

[4] Again, if the contract of sale and purchase was between Faircloth & Co. and Price & Downs, as the plaintiffs in error alleged, and as the trial court found by his findings of fact, the judgment, if any, against Price & Downs would have to be based upon the transaction between Faircloth & Co. and Price & Downs, and not on transactions between Faircloth & Co. and Cunningham & Peel. The trial court found as a matter of fact that Faircloth was with Price when Price went to Cunningham & Peel's mill to find out if Cunningham & Peel could cut the ties, and Price gave Faircloth & Co. the order for the 2,000 ties after he and Faircloth had returned to Roganville from the mill, and the written order confirming this verbal transaction was to Faircloth & Co., and not to Cunningham & Peel. Under these facts, Faircloth & Co. could not recover against Price & Downs upon the allegations of its petition.

[5] The lumber manufactured to order for Price & Downs upon their order to Faircloth & Co. remained the property of Faircloth & Co. until accepted by Price & Downs, although it may have been tendered to Price & Downs by Faircloth & Co. The ties were refused on report of the inspector. Such being true, plaintiffs' cause of action, if any, against Price & Downs was for damages for breach of contract. Tufts v. Lawrence & Co., 77 Tex. 529, 14 S. W. 165; Tufts v. Stuart, 23 S. W. 834; Sonka v. Chatham, 2 Tex. Civ. App. 312, 21 S. W. 948; I. & G. N. Ry. Co. v. Ogburn, 26 Tex. Civ. App. 247, 63 S. W. 1074, and authorities therein cited. See, also, Rose's Notes, vol. 1, p. 572, and volume 4, p. 47, for line of authorities on this subject.

It follows from what we have said that plaintiffs in error's first assignment of error, which they inadvertently call their second assignment of error in their brief, which is quite lengthy, but is substantially to the effect that, the allegata and probata not agreeing, the judgment is not warranted, and the trial court should have instructed a verdict for them, or should have granted them a new trial, must be sustained as to the new trial.

[6] Appellants' second assignment of error is to the effect that the trial court erred in not granting a new trial and in not rendering judgment for defendant company because the pleadings of the plaintiffs and the proof failed to show the election of remedy sought by the plaintiffs:

"(a) Whether plaintiffs stored and preserved the ties in question, subject to these defendants' order, and are now suing for the entire purchase price.

"(b) Whether plaintiffs, acting as the agent of defendants, sold said ties, and are now asking for the difference in the price received and the contract price thereof.

"(c) Whether plaintiffs retained said ties as their property, and are now asking for the difference in the then market price of said ties and the contract price thereof."

This is a correct proposition of law, and upon the next trial of this cause should be adhered to by the court.

If Price & Downs had had a contract with Cunningham & Peel, as alleged by the plaintiffs, to furnish them with 2,000 cross-ties, and Cunningham & Peel had delivered the timbers in accordance with such contract, and Price & Downs had refused them, in such event Cunningham & Peel would be bound by this principle of law. Then certainly Faircloth & Co., if they had purchased such account or contract from Cunningham & Peel, could get no more against Price & Downs nor any different cause of action than that which Cunningham & Peel had in the beginning. But the findings of fact show the contractual relations to exist directly between Price & Downs and Faircloth & Co.; and the rule of law above quoted is applicable to them. Ogburn-Dalchau Lumber Co. v. Taylor, 126 S. W. 48; Waples et al. v. Overaker et al., 77 Tex. 7, 13 S. W. 527, 19 Am. St. Rep. 727; Stewart Produce Co. v. Gamble-Robinson Com. Co. (Mo. App.) 175 S. W. 319; Mechem on Sales, vol. 2, par. 1678.

In the former trial of this case no disposition whatever is made of the defendants in error's plea of limitation. It should be disposed of, and the judgment should show what disposition was made of it.

Were it not for the joining of issues by plaintiffs and defendants in this cause on defendants' answer and cross-action, this court would have to render the case in favor of plaintiff in error; but, issue having been joined by the parties upon answer and cross-action of the one and supplemental petition of the other, the cause is reversed and remanded for trial upon the issues thus made.

Reversed and remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes