## STEPHENS v. KANSAS CITY LIFE INS. CO. (No. 9608.)

(Court of Civil Appeals of Texas. Fort Worth. April 23, 1921. Rehearing Denied May 28, 1921.)

1. **Appeal and error ⇐1029 — Assignments immaterial where no other judgment proper under undisputed evidence.**

Where, under undisputed evidence, no other judgment than the one rendered was proper, all assignments of error are immaterial and should be overruled.

2. **Sales ⇐85(3)—No recovery for failure to purchase real estate loans on honest advice of attorneys to whose opinions contract stipulated to be subject.**

In an action for breach of a contract to purchase real estate loans secured by first lien bonds, where the evidence was undisputed that defendant might exercise its judgment freely as to the title, regularity of the proceedings and value of the securities of all loans offered by plaintiff, and that the loans rejected were refused, because of some question as to title or as to the value of the land or security offered, though the titles to all such loans had been approved by plaintiff's attorneys, and the values of the lands were equal to or in excess of those agreed on, the report of defendant's attorneys or inspectors tending to a contrary conclusion was conclusive, in the absence of allegation or proof they were made in bad faith; the merits of an honest opinion actually given by the attorney for a party, to whose opinion as to the title to or legal status of things to be purchased such party stipulates his contract to purchase shall be subject, not being subject to review.

3. **Sales ⇐384(2)—Measure of damages for failure to purchase real estate loans stated.**

The measure of damages for breach of a contract to purchase real estate loans secured by first lien bonds, where plaintiff elected, not to resell the bonds for defendant's account, but to retain them as his own, is the difference in the contract price and market value thereof, not in the county wherein the lands were located, but at the place where and time when the bonds were to be delivered, so that, in the absence of evidence as to the state of the market at such place and time, plaintiff cannot recover.

4. **Trial ⇐351(2)—Seller of real estate loans cannot recover lost profits where submission of such issue not requested nor omission thereof objected to.**

In an action for breach of a contract to purchase real estate loans, though the pleadings

were broad enough, and the evidence sufficient to authorize the recovery of profits as damages, plaintiff could not recover such lost profits where he made no request for the submission of such issue and did not object to the omission thereof from the issues submitted by the court.

Appeal from District Court, Shackelford County; W. R. Ely, Judge.

Suit by W. H. Stephens against the Kansas City Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant.

Cockrell, Gray, McBride & O'Donnell, of Dallas, for appellee.

CONNER, C. J. The appellant, W. H. Stephens, instituted this suit in the district court of Shackelford county to recover of appellee, the Kansas City Life Insurance Company, the sum of $2,875.73, with interest at the legal rate from July 2, 1918, upon an alleged breach of contract on the part of the insurance company to purchase from the plaintiff certain real estate loans specifically described in his petition. The case was submitted upon 28 special issues. Upon the findings thereon judgment was rendered for defendant, and plaintiff has appealed.

The pleadings of the parties presented the issues submitted, and those issues, with the answers of the jury, may be thus briefly stated in narrative form, viz.:

That Fred W. Fleming, chairman of the board of the Kansas City Life Insurance Company, made a contract with appellant, as alleged in his petition, but that he was without authority, or apparent authority, to do so, and that the contract had not been ratified by the company, but that the insurance company had held out to the plaintiff that the said Fleming had authority. The jury further found that the insurance company had breached its contract and also answered "No" to the following special issue:

"Did the plaintiff, W. H. Stephens, diligently perform his obligations and agreements under the contract entered into between himself and the Kansas City Life Insurance Company, through Fred W. Fleming, chairman of its board, as alleged in plaintiff's petition?"

In the view that we have taken of the case, we think it unnecessary to indicate the remaining issues and findings.

[1] Appellant has presented numerous assignments of error, including an assignment which alleges misconduct on the part of the jury, but we have concluded that all assignments are immaterial and should be overruled, on the ground that under the undisputed evidence no other judgment than the one rendered was proper.

[2] The evidence shows without dispute that appellant's method of business, in so far as pertinent to the case before us, was to make loans upon real estate in Texas, securing the same by real estate bonds made first liens, bearing interest at the rate of 6½ per cent., and also take interest coupons at the rate of 1½ per cent., secured by a second lien upon the land; that the bond bearing the 6½ per cent. would be forwarded to the appellee company, which, if the loan was approved, would return to appellant the face value of the bond with accrued interest, appellant retaining the interest coupons for the 1½ per cent., which represented his profit in the transaction. Appellant alleged that he had secured an agreement with the insurance company through Fred W. Fleming, chairman of its board of directors, to take loans of the kind, aggregating from $50.000 to $100,000, and that the loans specified in his petition had been so secured and forwarded to the insurance company, which had wrongfully rejected them.

Appellee, by pleadings and evidence, denied that any specific agreement of the kind alleged had been made; the chairman, Fred Fleming, testifying in effect that he had merely indicated or stated a willingness to accept loans of the kind to the extent stated.

However, we think that evidence, both in behalf of the appellant and in behalf of the appellee, is without dispute, to the effect that the insurance company was to have full privilege to exercise its judgment freely as to the title, regularity of the proceedings, and value of the securities of all loans offered by appellant, and that the loans specified in the plaintiff's petition, and which were rejected by the insurance company, were refused on the ground either that there was some question made as to title, or as to the value of the land, or the security offered. Appellant's evidence tended to show that the titles to all the loans presented by him and rejected by the company had been approved by his attorneys, and also that the values of the lands upon which the liens to secure the loans had been taken were equal to or in excess of the 50 per cent. agreed upon or contemplated between the parties, but there was no allegation and no proof that the reports of appellee's attorneys or inspectors, which tended to a contrary conclusion, were made in bad faith, and, unless so made, the conclusion on those subjects by the officers of the insurance company to which these matters were submitted was conclusive. We had occasion to consider the question in the recent case of R. M. Grant v. City of Mineral Wells (No. 9528) 230 S. W. 854, not yet [officially] published, where may be found numerous authorities on the subject. We there approved the following quotation of the rule as given by the Supreme Court of Ne-

braska in the case of Thurman v. City, 64 Neb. 490, 90 N. W. 253:

"Where a party stipulates that his contract of purchase shall be subject to the opinion of his attorney as to the title to or legal status of the thing, to be purchased, the plain purpose being to make his act dependent upon the personal opinion of his legal adviser, the sole requirement is that such legal adviser in fact pass upon the subject and give his honest opinion, and the merits of an honest opinion actually given are not subject to review;" "and his decision is conclusive, provided he really passes upon the question and reaches a conclusion honestly, whether his conclusion is right or wrong."

See, also, the case of San Antonio v. E. H. Rollins & Sons, 127 S. W. 1166; Amarillo v. Slayton, 208 S. W. 967; U. S. Trust Co. v. Guthrie, 181 Iowa, 992, 165 N. W. 188; and the numerous other cases cited in Grant v. City of Mineral Wells.

[3] For yet another reason it would seem that the judgment must be affirmed. In appellant's pleadings it was alleged that he had elected, not to resell for appellee's account as he might have done, but to retain as his own the securities which appellee rejected, and he apparently selected as his measure of damage the difference in the market value of such securities in Shackelford county and what appellee agreed to pay therefor. No other measure was called for in the issues submitted to the jury, nor did appellant request the submission of any issue which would have enabled the court to apply any other measure. If, therefore, the securities involved be treated as personal property, as appellant treated them, then, under the facts as so pleaded and submitted, appellant's measure of damage, if any, was the difference in the contract price and the market value at the place where and at the time when they were to be delivered by the terms of the contract, to wit, in Kansas City, Mo., and not in Shackelford county, Tex. Mr. Williston, in his recent work on Contracts (volume 3, § 1378), thus summarizes the rule in cases where a buyer of goods under an executory agreement refuses to accept them, viz.:

"The measure of damage is the difference between the contract price and the market price of the goods at the time when and at the place where the contract should have been performed."

The text is supported by numerous authorities cited in a footnote and accords with our own cases. See Welden v. Tex. Con. Meat Co., 65 Tex. 487; Wolert v. Arledge, 4 Tex. Civ. App. 692, 23 S. W. 1052.

If the foregoing observations are correct, appellant's case must fail for want of proof. No evidence whatever was offered as to the state of the market in Kansas City, where, by the terms of the contract, the securities were to have been delivered. For aught that the evidence shows, appellant could have sold the securities on the open market in Kansas City at the time of their rejection for more than appellee agreed to give for them, assuming, of course, that they were as unobjectionable as appellant contends they were.

[4] It is insisted that appellant also prayed to recover profits as damages. His pleadings are doubtless broad enough, and possibly the evidence sufficient to authorize such relief, but, as already noted, he made no effort to have this element of damage determined by a request for the submission of an issue directed to the question of profits. Nor were the issues submitted by the court objected to on the ground that the issue of profits was ignored. In other words, it seems apparent from the whole record that appellant elected to rely on a difference in value and contract price as a measure of damage. Moreover, the profit most reasonably to be contemplated was the 1½ per cent. interest represented by the interest coupons and secured by the second mortgage. This represents the direct or proximate profit appellant would have received had appellee accepted the securities, and this profit he has not lost, having elected to retain the securities as his own. It is also suggested that appellant is at least entitled to nominal damages, but this contention cannot be supported. If the verdict of the jury is to be accepted, appellant himself did not comply with his part of the agreement, and therefore could in no event complain of appellee's breach. If, on the other hand, the verdict of the jury is entirely rejected because of misconduct on the jury's part, or because the findings are conflicting, as urged, then the undisputed proof shows, as already noted, that appellee had the privilege of rejecting for reasons deemed sufficient by its managing officers.

We therefore for the reasons indicated, overrule all assignments of error, regardless of the proper determination of the questions therein presented, and affirm the judgment.